# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

ANN MARIE STANFORD,

    PLAINTIFF,

VS.                                                                              CASE NO.: CV-09-J-2020-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    DEFENDANT.

## **MEMORANDUM OPINION**

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

### **Procedural Background**

The plaintiff applied for disability insurance benefits and supplemental security income due to being HIV positive, excessive weight gain, depression, back pain, numbness in her right thigh and hand, shooting pain in her left knee and ankle, headaches, trouble sleeping, shortness of breath, muscle spasms, swelling in her feet and easy bruising (R. 79). The initial applications were denied (R. 27) and the plaintiff requested a hearing in front of an administrative law judge (ALJ), which was

subsequently held on August 22, 2008 (R. 214). The ALJ thereafter found that the plaintiff was not under a disability at any time through the date of the decision (R. 18-26). The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on August 11, 2009 (R. 3-5). The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C.§ 405(g). This action for judicial review of the agency action followed (doc. 1). The plaintiff argues that the ALJ's finding that she can engage in light work and hence return to her past work is not based on substantial evidence (doc. 10).

The court has considered the record and the briefs of the parties. For the reasons set forth herein, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further action consistent with this opinion.

**Factual Background**

The plaintiff was born on December 16, 1971, graduated high school and trained as a nurse's aide (R. 217-218). She previously worked as a waitress, cashier, and in a nursing home (R. 218-219). The plaintiff's past work as a nurse's aide is classified as medium and semi-skilled, as a waitress is light and semi-skilled, and as a cashier is light and unskilled (R. 229). Her prior semi-skilled work would have provided her with no transferrable skills (R. 229).

The plaintiff testified that she has problems breathing, that she hurts so badly she cannot get up, that she has numbness and tingling in her hands and legs, that she gets short of breath and needs her inhaler to walk more than one block, that she can sit for about half an hour, and that she can stand for maybe five to ten minutes (R. 219-220). She can carry a gallon of milk but no more than that (R. 220). She also has swelling in her arms, elbows and knees (R. 220). Her knees also give out (R. 221). The plaintiff alleges she has back pain which gets as high as an eight out of ten on the pain scale for as much as four hours a day (R. 221). She also lies down three to four hours a day to help relieve pain (R. 221). Her pain medication makes her sleepy and when it "kicks in, I get really tired and I have to sleep for a little while" (R. 223). She also testified that she gets headaches and chest pain, sometimes so bad that she throws up (R. 226). She has the headaches daily (R. 226).

The plaintiff is also on medication for depression (R. 222). The plaintiff testified that she also suffers from chest pain, hip pain and shortness of breath (R. 222). She related that her regular treating physician, Dr. Mobley, thought many of these problems were caused by "the AIDS attacking the systems of [her] body" (R. 222). The plaintiff also testified that she gets short of breath walking from the bathroom and from washing her hair (R. 223). She also has problems with remembering (R. 224-225).

The plaintiff testified that her husband does the grocery shopping and she stays home as much as she can, going only to the doctor (R. 225). She and her husband and children live in an assisted living apartment (R. 223-224).

During the hearing, the ALJ questioned the VE about sedentary, sit-stand jobs, but did not ask any hypotheticals including such jobs (R. 229). Rather, he just asked for examples of the same (R. 229). The VE testified mild to moderate pain would be 1 through 6 on the 10 point pain scale, while 7 through 9 would include moderate to severe pain (R. 230-231). The ALJ then stated

> That after I have evaluated the evidence in this case, and apparently we're going to have the pain and psychological problems involved, that I find that the problems Mrs. Stanford has alluded to in her testimony, that she's having right now, three, four hours a day, going to the doctor on a frequent basis, to the extent she described it, and that she has this pain, we will just, at this point, say it's pain. She does some work around the house but she's up and down, and from what she says, she's unable to walk a block. She's able to stand for just 30 minutes or so. She can't lift very much at all. So if she has to lie down three, four hours a day and go to the doctor as frequently as she's indicated, what would that do to her ability to work on a regular and continuing basis?

(R. 232). The VE responded that it would preclude all work (R. 232).

The medical records contained in the file begin with plaintiff's pregnancy in 2004. They reflect that she was HIV positive and had a history of depression (R. 174-182).

Dr. Jane Mobley is the plaintiff's regular treating physician. Her treatment records begin in April 2006 when plaintiff was noted to be HIV positive, had aches and pains, weight gain and easy bruising (R. 169). At the time she rated her pain as a 4 out of 10 (R. 169). In June 2006 the plaintiff had complaints of chest pain with shortness of breath and nausea (R. 166). She was also diagnosed with depression and anxiety (R. 166). Records from October 2006 reflect diagnoses of headaches, shortness of breath, weight gain, and the plaintiff rated her pain as a 4 out of 10 (R. 160). The following month, the plaintiff's pain was a 6 out of 10, she had continued weight gain, and complained of vomiting and headaches (R. 159).

December 2006 records reflect that the plaintiff was HIV positive, had ongoing weight gain, persistent and worsening lower extremity edema, bad headaches associated with chest pain, numbness in her fingers and was becoming more depressed (R. 157). She was noted to have fatigue and crying spells (R. 157). Her edema was 3+ to the mid thighs (R. 157). She also had right ventricular enlargement and other symptoms which suggested congestive heart failure, as well as musculoskeletal pain (R. 157). At a February 2007 appointment, Dr. Mobley noted the plaintiff had continued to gain weight, had headaches and was HIV positive (R. 155). An abdominal ultrasound revealed multiple gallstones, an enlarged spleen and an enlarged liver (R. 156).

On referral from Dr. Mobley, in April 2007 Dr. Rick Player noted the plaintiff had shortness of breath with exertion at 10 to 15 feet, and could only walk up three steps before having to stop, that she quit driving long distances because of fear of falling asleep, and had gained about 150 pounds in the past year (R. 153). He opined that the plaintiff suffered from pulmonary hypertension, either from obstructive sleep apnea or from an HIV infection causing a vasculopathy (R. 153).

A May 2007 record reflects that the plaintiff is HIV positive but not currently indicated for therapy, that she suffers from fatigue, and that she has chronic right hip and left knee pain (R. 152). She was noted to also have pulmonary hypertension, and diffuse myalgias, primarily back pain (R. 152). Fatigue was noted and she was also noted to be morbidly obese (R. 152). She was told to continue Ultram (Tramadol), to be taken with Motrin (R. 152).

In June 2007 the plaintiff was noted to have chest and back pain, with the chest pain sometimes causing her to vomit, which resolves the pain (R. 150). That record reflects that the plaintiff "continues to have severe pain. Her right hip and left knee being the most prominent spots. Both her hip and her knee tend to give out on her at times and she has had to crawl to get somewhere to sit until her symptoms improve" (R. 150). She was also noted to have lower extremity edema, fatigue, and chronic shortness of breath, more prominent with exertion (R. 150). The plaintiff's

assessment listed that she is HIV positive, but not currently indicated for therapy; pulmonary hypertension, possibly related to sleep apnea and a sleep study was pending; hypertension; and chronic pain with MRIs of the left knee and right hip pending, and with the possibility of chronic opiate therapy for pain control (R. 150). Her doctor noted that with Motrin and Ultram, the plaintiff's pain went from an 8 out of 10 to a 5 out of 10 (R. 150).

Records from September 2007 note the plaintiff complained of chest pain, knee pain and headaches, with her pain being a 7 out of 10 (R. 210). The plaintiff was referred to Dr. James Floyd for her left knee pain (R. 208). He noted plaintiff's report that her knee occasionally gives way when walking and that she had trouble stepping off curbs or going down stairs (R. 208). He referred her to physical therapy (R. 208).

February 2008 records reflect that the plaintiff had an abscess that would not heal and a rash on her face (R. 205). She felt cold all the time, had chronic shortness of breath, and lesions under her arm and on her face, believed to be from a staph or strep infection (R. 205).

The plaintiff began treatment for depression and anxiety at Capitol Care South in 2008 (R. 187-188). Those records reflect that the plaintiff stated she tried working multiple jobs, but could not perform the duties required and thus had applied for disability (R. 189). She also reported being in constant pain (R. 195). In May 2008

she was assigned a Global Assessment of Functioning ("GAF") score of 60 and diagnosed with PTSD, depressive disorder, as well as physical ailments (R. 196). In July 2008 her affect was described as constricted and anxious (R. 199). Her insight and judgment were noted to be impaired (R. 199). She was again diagnosed as suffering from PTSD, depressive disorder, as well as chronic pain, HIV positive, and other physical problems (R. 200). Also in May, the plaintiff reported to Dr. Mobley that her pain was a 6 out of 10, she had memory problems, and the diagnosis of fibromyalgia was added (R. 204).

Dr. Mobley's medical records from July 2008 note that Lyrica has somewhat helped the plaintiff's arthralgias and myalgias, but she had swelling in her hands and feet (R. 203). Her diagnoses included HIV, right ventricular dysfunction, morbid obesity, microcytic anemia, fibromyalgia, and depression (R. 203). In a letter dated September 25, 2008, Dr. Mobley stated that the plaintiff "has heart and lung disease and is unable to ambulate more that (sic) 1/2 block secondary to shortness of breath. Thanks in advance for any assistance you can provide ..." (R. 211).

The ALJ concluded that plaintiff suffered from the severe impairments of HIV positive, depression, and morbid obesity but none of which meet or equal the requirements of any listed impairment (R. 20). No mention is made of the diagnosis of fibromyalgia, chronic shortness of breath, or any of plaintiff's other problems. The

ALJ stated that "no treating or examining physician or medical expert has found that her impairments meet or equal any listing" (R. 20), although the record does not reflect that any physician or medical expert was ever asked the same. The ALJ concluded that the plaintiff can perform the full range of light work (R. 21). Based on that conclusion, the ALJ determined that the plaintiff could return to her past relevant work as a cashier and a waitress (R. 26). On that basis, the ALJ ruled that the plaintiff was not under a disability at any time through the date of the decision (R. 26).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the claimant, who must prove that due to a mental or physical impairment she is unable to perform her previous work. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). If the claimant is successful, the burden shifts to the Commissioner to prove that the claimant can perform some other type of work existing in the national economy. *Id.*

This court's review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th

Cir.1990). "Substantial evidence" is generally defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). This court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.1988); *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir.1993).

However, no such presumption of correctness applies to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1235 (11th Cir.1991); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). The Commissioner's "failure to ... provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

It is well established that the ALJ, in making a disability determination, must consider the combined effects of all impairments. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir.2002); *Jones v. Dept. of Health & Human Servs.*, 941 F.2d

10

1529, 1533 (11th Cir.1991). If the claimant alleges multiple impairments, the claimant may be found disabled even though no single impairment is considered disabling. *Walker v. Bowen*, 826 F.2d 996 (11th Cir.1987).

## Legal Analysis

The ALJ determined the plaintiff retained the residual functioning capacity to perform the full range of light work. To reach this conclusion, the ALJ disregards large portions of medical evidence, misrepresents other records and completely ignores plaintiff's treating physician's opinions. Most glaringly, the ALJ ignores the medical records finding the plaintiff suffers from fibromyalgia and is being treated for the same with Lyrica. He completely ignores the repeated medical notations regarding the plaintiff having severe problems with shortness of breath and her treating physician's letter stating that the plaintiff can walk no more than 1/2 block secondary to shortness of breath (R. 211).

The ALJ first discounts the plaintiff's allegations of depression and anxiety because she did allege disability secondary to these problems and because "she had very little mental health treatment" (R. 22). This ignores the fact that the plaintiff has been diagnosed as suffering from depression and receiving mental health treatment from medical providers since at least 2004. The ALJ further states that although the plaintiff testified that she stopped working due to chronic pain, she indicated on her

Work History Report that she quit due to pregnancy (R. 22). This simply is an incorrect representation of that report. In the Work History Report contained in the record (R. 86-91), no explanation is contained for why plaintiff stopped working. However, in her Disability Report (R. 78-85), the plaintiff states, "I stopped working at Tendercare because I was pregnant. I then switched jobs to KFC and was able to work for a short time but had to stop due to my disabling condition" (R. 79). The ALJ next finds that although the plaintiff stated that "Dr. Mobley attributed her pain to her HIV status, [] there is no evidence to support her testimony" (R. 22). The ALJ is correct, but only to the extent that Dr. Rick Player was the physician who opined that the plaintiff suffered from pulmonary hypertension, either from obstructive sleep apnea or from an HIV infection causing a vasculopathy (R. 153).

The ALJ concludes that because the plaintiff does unspecified household chores with help from her family, spends time with her children, and can groom and dress herself, her subjective complaints are not fully credible (R. 22). He therefore concludes that the plaintiff can engage in a full range of light work, including her past relevant employment (R. 26). However, the plaintiff's minimal daily activities do not translate into being able to perform work on a full time regular basis. *See Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997); *Venette v. Apfel,* 14 F.Supp.2d 1307,

1314 (S.D.Fla.1998). This is especially true in light of plaintiff's testimony that she gets out of breath washing her hair and walking to the bathroom and back.

The court further finds the record devoid of substantial evidence to support the ALJ's decision with regard to the medical evidence. No opinion regarding the plaintiff's physical abilities by a physician who has ever seen or treated the plaintiff appears in the record. Rather, there is only Dr. Mobley's opinion that the plaintiff is in chronic pain and that "[h]er pain is disabling" (R. 150). There is also Dr. Mobley's opinion that the plaintiff is "unable to ambulate more that (sic) 1/2 block secondary to shortness of breath..." (R. 211). Dr. Mobley further believed the plaintiff's pain to be severe enough that she diagnosed the plaintiff with fibromyalgia and prescribed Lyrica, as well as Tramadol, Flexeril and ibuprofen for her pain (R. 203). However, the ALJ opted to give little weight to Dr. Mobley's opinions because she "provided no limitations as to sitting or standing, which suggests that the claimant has no such limitations" (R. 25). He then ignores the sole limitation Dr. Mobley does specifically set forth, that being plaintiff's inability to walk more than 1/2 block because of shortness of breath.

When evaluating an applicant's claim for social security disability benefits, the ALJ must give "substantial weight" to the opinion of the applicant's treating physician "unless good cause exists for not heeding the treating physician's

13

diagnosis." *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991). Here, that good cause is lacking. The Eleventh Circuit has defined "good cause" as: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Lewis*, 125 F.3d at 1440 (quotation marks and citations omitted). If the ALJ disregards or accords less weight to the opinion of a treating physician, the ALJ must clearly articulate his reasons, and the failure to do so is reversible error. *Id*.

The plaintiff was not sent for a consultative evaluation because the ALJ did not believe plaintiff needed one. The following exchange takes place during the hearing:

EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q. Dr. Mobley is at Cooper Green?

A. Yes.

Q. And Dr. Mobley has given us a pretty good report, physician's progress report, in B6-F, but its dated June 27, 2007. It that about -- are you worse now than you were then, one year ago?

A. Yes, I am.

Q. Are you still seeing Dr. Mobley?

A. Yes.

14

>ALJ: Why can't we get Dr. Mobley to just update her?
>
>ATTY: I'll ask for that.
>
>ALJ: If we could get her to update this thing, I don't think we'll need to send her out. She's still seeing her, Dr. Mobley, as her treating physician?
>
>ATTY: Dr. Mobley is -- it's my understanding, is the chief doctor at the St. George Clinic at Cooper Green that deals with that.
>
>ALJ: Medicaid couldn't get it, but she's -- I understand one that -- she's got one -- well, we got one 4/26/07, too. That's a little over a year ago. So if we could get -- update her June 27, 2007 statement, we'd be in a good position, I think.
>
>ATTY: Okay.
>
>ALJ: Seems to me like she's done a pretty good job in setting it out. The pulmonary hypertension and the chronic pain, that's just what I'm hearing from her testimony.

(R. 227-228).

There are no medical residual functional capacity (RFC) determinations regarding the plaintiff's abilities or limitations caused by her various diagnoses, other than one completed by a medical consultant who has never seen or examined the plaintiff (R. 122-129). In other words, the record is devoid of any opinion by a doctor who has ever seen the plaintiff as to her abilities and limitations. However, the ALJ never requested the plaintiff obtain this information from Dr. Mobley and further specifically declined to get the opinion of a consultative examiner. An ALJ has a duty

"to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir.2007); citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).

Nothing in the record supports the ALJ's conclusion that the plaintiff can perform a full range of light work. The court finds that the ALJ could only reach his conclusions by ignoring or substituting his judgment for the medical evidence contained in the record, as set forth above. While the ALJ did not have to order a consultative examination, he also cannot use the fact that Dr. Mobley failed to give opinions regarding the plaintiff's abilities because she was never asked for them as a basis to find the plaintiff's testimony unsupported by her medical records.

Similarly, the ALJ discounts the plaintiff's pain because Dr. Mobley noted the plaintiff's hip, knee and back pain decreased to a 5 out of 10, which the ALJ labels as "mild" (R. 24). The ALJ then determined that on December 5, 2007, and February 27, 2008, the plaintiff denied knee and back pain and reported only "moderate" pain in May 2008 (R. 24). However, the December 5, 2007, record, referred to as a "Ten-Minute Coordination of Care Note," reflects that the plaintiff complained of numbness in her hands, more frequent when lying down or using her hands, chronic

shortness of breath, that she is supposed to have a sleep study, and that there is a ganglion cyst, left knee (R. 207). There is no evidence in that record that she was ever asked about hip and back pain, let alone denied having the same.[1] Similarly, non-healing skin lesions were noted in the February 27, 2008, record, but there is no evidence that the plaintiff denied knee and back pain (R. 205). The court further observes that the "moderate" pain plaintiff reported in her May 22, 2008, office visit was actually a 6 out of 10 (R. 204). That record notes that the plaintiff reported "Pain All Over" (R. 204).

As to the plaintiff's testimony that she has to lie down for three to four hours a day, the ALJ simply ignores it. This court finds that the records of the treating physician offers substantial support for the plaintiff's allegations. No medical evidence contradict Dr. Mobley's opinions and conclusions, and she certainly never opined that the plaintiff was malingering. Rather, her records demonstrate that the plaintiff's treating physician was searching for treatment for plaintiff's symptoms and

---

[1] The Eleventh Circuit has recognized that the "hallmark" of fibromyalgia is "a lack of objective evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.2005). The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. Given the nature of fibromyalgia, a claimant's subjective complaints of pain are often the only means of determining the severity of a patient's condition and the functional limitations caused thereby. *Somogy v. Commissioner Of Social Security,* 2010 WL 529297, 8 (11th Cir.2010), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 105-08 (2nd Cir.2003).

trying to determine the cause of them. No medical evidence in the record refutes the plaintiff's allegations of pain and her continual need to rest because of pain.

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir.1984). A claimant may be entitled to an immediate award of benefits where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability. *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir.1985). Because the record is devoid of a RFC by a medical authority who has ever seen the plaintiff, because the plaintiff's treating physician has opined that the plaintiff is disabled, and because the ALJ's findings contradict the medical evidence in the record, this case is due to be reversed.

### IV. Conclusion

When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made. *Reyes v. Heckler*, 601 F.Supp. 34, 37 (S.D.Fla.1984). Thus, this court has the authority under 42 U.S.C. §405(g) to reverse the Commissioner's decision without remand, where, as here, the Commissioner determination is in plain disregard of the

overwhelming weight of the evidence. *Davis v. Shalala*, 985 at 534; *Bowen v. Heckler*, 748 F.2d 629 (11th Cir.1984).

Based on the lack of substantial evidence in support of the ALJ's findings and the ALJ's failure to apply the proper legal standards, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency to calculate the plaintiff's monetary benefits in accordance with this Opinion.

**DONE** and **ORDERED** this the 11th day of May 2010.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE